## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ROBERT CHUCHRAN**, *an individual*,

      Plaintiff,

vs.

      Case No.:  17-cv-
      Hon.

**COUNTY OF MACOMB,** *a political Subdivision of the State;* and
**ERIC SMITH**, *an individual, sued in his official and personal capacity;* and
**KAREN BATHANTI**, *an individual, sued in her official and personal capacity*

      Defendants.

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Benjamin I. Shipper (P77558)**
**Irina L. Vaynerman (0396759)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304-2909
248-258-2500/FAX 248-258-7881
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiff Robert Chuchran, by and through his attorneys Deborah Gordon

Law, complains against Defendants as follows:

## Claims, Jurisdiction, and Parties

1.    This is an action for freedom of association and free speech violations under the First Amendment to the United States Constitution, brought pursuant to 42 U.S.C § 1983.

2.    This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3.    Plaintiff Robert Chuchran ("Plaintiff") is a resident of Macomb County, Michigan.  He resides in the Eastern District of Michigan.

4.    Defendant County of Macomb ("Defendant County") is a political subdivision of the State of Michigan.  The subdivision is in the Eastern District of Michigan.

5.    Defendant Eric Smith ("Defendant Smith") is an individual and the elected Prosecutor for Defendant County.  He resides in the Eastern District of Michigan.

6.    Defendant Karen Bathanti is an individual and for all times relevant was the Human Resources Service Director for the Defendant County.  She resides in the Eastern District of Michigan.

7.    Defendants County and Smith will collectively be referred to herein as "Defendants" unless more specifically referenced.

8.    The events giving rise to this matter occurred in Macomb County,

Michigan, within the Eastern District of Michigan.

## Background Facts

9.     Plaintiff worked as a police officer in the City of Roseville for over twenty five years, until he retired in 2007.

10.     Plaintiff began his employment with Defendants in or about January 2008 as an Investigator in the Office of the Prosecutor.

11.     Plaintiff's performance has at all times been satisfactory or better.

12.     In or about December 2014, Defendants made Plaintiff the LEIN Terminal Agency Coordinator ("TAC") for Law Enforcement (a "TAC Officer").

13.     LEIN is an acronym for the Law Enforcement Information Network, the statewide computerized information system for criminal justice agencies.

14.     Access to the LEIN system and the information contained within it is regulated by state and federal laws, regulations, rules and/or policies.

15.     In or about January 2015, Plaintiff was sent to TAC Training.

16.     Upon his return from training, Plaintiff engaged in protected activity by complaining to his supervisors, both verbally and in writing, and refusing to acquiesce in numerous violations of law, regulations, rules and/or policies regarding LEIN.

17.     Plaintiff also complained verbally about Defendants' violations to a LEIN Field Service Officer at the Michigan State Police.

18.     As a result of his protected activity, Plaintiff was retaliated against and fired as Defendant's TAC Officer.

19.     Thereafter and in retaliation for his protected activity, Plaintiff's duties and responsibilities as an Investigator were severely limited.

20.     Defendant Eric Smith does not permit dissent or critique within the ranks of the Prosecutor's Office at Macomb County.

21.     In fact, since 2006, Defendants have bound assistant prosecuting attorneys to a "loyalty oath," which prohibits assistant prosecutors from running against the County Prosecutor and prohibits them from supporting the County Prosecutor's election opponent.

22.     Defendants have fostered a culture in which employees who criticize Defendants' practices and policies are punished.

23.     Plaintiff nonetheless continued to engage in protected activity by complaining to his supervisors and refusing to acquiesce in numerous violations of law, regulations, rules and/or policies regarding LEIN, including but not limited to Defendants' policy and practice of requesting false arrest warrants for disorderly conduct non-support based on child support summonses that were dismissed for nonservice and *before* any child support order had ever been entered.

24.     Defendants outwardly expressed discontent with Plaintiff's protected speech and called him disparaging names, including but not limited to "LEIN Nazi."

25.     In or about December 2015, Plaintiff was further retaliated against and was transferred to the paternity division of Defendant County Prosecutor's Department.   Based on information and belief, this assignment is widely considered a punishment.

26.     While in the paternity division, Plaintiff engaged in protected activity by reporting, objecting to and failing to acquiesce in the practice of being required to seek arrest warrants based on summonses for child support that were dismissed for nonservice, which is a violation of the law.

27.     Plaintiff complained verbally, through phone calls, to the Michigan State Police, LEIN Field Services, and CJIS employees about Defendants' violations of law.

28.     By or before December 2015, Defendant Smith had decided to terminate Plaintiff because of his internal and external complaints about Defendants' violations of law.  Plaintiff, however, was a "just cause" employee, and thus Defendant Smith developed and began executing a plan to track Plaintiff's activities closely, looking for any possible reason to discipline and

terminate him. Defendant Smith requested the assistance of Defendant Bathanti in the execution of this plan, and Defendant Bathanti readily assisted.

29.     On or about February 23, 2016, Plaintiff was placed on administrative leave in preparation for the imposition of disciplinary charges against him, allegedly for a Facebook post on his personal account. In fact, Defendants were retaliating against Plaintiff for objecting to Defendants' illegal practices.

30.     The same Facebook post had been shared by members of Defendant Smith's immediate family; it was a posting called "Minion Quotes" and was a reference to the "Minions" movie.

31.     Plaintiff had made the Facebook post in jest and Defendants knew that the posting was a joke.

32.     While Plaintiff was on administrative leave, Defendants did not permit him to return to Defendants' properties and/or enter any Macomb County buildings.

33.     Public meetings are held in Macomb County buildings, such as public hearings for the Macomb County Board of Commissioners. Plaintiff was categorically prohibited from attending any of these meetings.

34.     While Plaintiff was on administrative leave, he needed to go to the Macomb County Register of Deeds in order to conduct business related to his deceased mother's home, but because of the unduly burdensome restrictions

Defendants had imposed, Plaintiff was unable to complete his family affairs since he could not enter any Macomb County buildings.

35.     On February 29, 2016, approximately one week after being placed on administrative leave, Plaintiff was subjected to a sham Loudermill hearing, which had a preordained result and was overseen by Defendant Bathanti.

36.     After approximately a month of being on administrative leave, Plaintiff was issued a five-day suspension without pay from March 28 to April 1, 2016, allegedly as a penalty for forwarding the Facebook post.  In fact, this was retaliation based on Plaintiff having engaged in protected activity.

37.     While Plaintiff was suspended, he was still not permitted to return to Defendants' properties and/or enter any Macomb County buildings.  Plaintiff was also ordered to complete counseling because of the Facebook post.

38.     In or about April 2016, Plaintiff was permitted to return to work.

39.     Upon his return to work, and in retaliation for his having engaged in protected activity, Plaintiff was reassigned to a desk in a far corner of a large storage room and given a memo from Defendant Smith entitled "Scope of Duties Within Family Support Division," the purpose of which was to intimidate Plaintiff and ensure that he had only mundane, low-level duties.

40.     This reassignment and the other events described below were designed to create intolerable work conditions for Plaintiff.

7

41.    In further retaliation for his objections, Plaintiff was only permitted to be at his desk or the copy machine.  Any and all leave from his desk had to be cleared with the Chief Investigator or his designee.

42.    On or about April 19, 2016, Plaintiff reported Defendants' numerous violations of LEIN laws, regulations, rules and policies by email to State of Michigan employees responsible for the LEIN system.

43.    On or about April 21, 2016, Plaintiff emailed a memo to Defendant Smith reporting and objecting to being assigned duties that violated LEIN rules and/or criminal law.

44.    As part of Defendant Smith's plan and design to harass and terminate Plaintiff, Defendant Smith created another sham basis to discipline Plaintiff.

45.    The email Plaintiff sent to Defendant Smith was sent from Plaintiff's home email account.  Plaintiff's home email provider was Juno, an email service which runs advertising links across the bottom of sent emails in exchange for free or low cost email services to its customers.

46.    The email at issue had an advertisement below the text of the email which stated, "Wall Street Daily; Peter Schiff: China Just Armed Its Financial Missile,"        with        a        corresponding        hyperlink, "http://thirdpartyoffers.juno.com/TGL3141/57196763de22d67631c7fst04vuc." Upon clicking on the advertised hyperlink, the email recipient redirected to a Wall

8

Street Daily article titled, "Peter Schiff: Armageddon is Inevitable." The advertisement was promoting the writings of author and American investment broker, Peter Schiff.

47.    Defendant Smith feigned that the reference to financial "Armageddon" was an intentional threat against him.  Defendant Smith also feigned that this email made him fear for his life.

48.    On April 22, 2016, the morning after Plaintiff sent the email to Defendant Smith, Plaintiff was escorted out of the building and put on administrative leave in retaliation for his objection to and reports that Defendants were violating LEIN laws, regulations, rules and/or policies.

49.    While Plaintiff was on administrative leave, Defendants did not permit him to return to Defendants' properties and/or enter any Macomb County buildings.

50.    On or around May 9, 2016, approximately two weeks after being placed on administrative leave, Plaintiff was subjected to another sham Loudermill hearing, which had a preordained result and was overseen by Defendant Bathanti.

51.    On or around May 18, 2016, while Plaintiff was on administrative leave, Defendants received a letter from the Michigan State Police informing them that they were under investigation for LEIN violations and reiterating that Plaintiff had notified the State about Defendants' violations.

52.    On May 27, 2016, Defendant Smith expressed in writing his desire for Plaintiff to no longer be employed by Defendants.

53.    On or about June 3, 2016, Plaintiff was issued a five-day suspension without pay, in direct retaliation for the April 21, 2016 letter he sent to Defendant Smith, detailing Defendants' ongoing LEIN violations.

54.    While Plaintiff was suspended, he was still not permitted to return to Defendants' properties and/or enter any Macomb County buildings.

55.    On or about June 13, 2016, Plaintiff returned to work.

56.    Upon his return, Plaintiff was sent to a warehouse and given menial, low-level duties including pulling and shredding LEIN paperwork from old files.

57.    At the warehouse, he was given standard operating procedures that no other employees were required to follow.

58.    For example, the warehouse manager stated she had gotten "clearance" to give him a staple remover.

59.    The retaliation and punishment of Plaintiff was blatant and obvious.

60.    The work of pulling and shredding LEIN paperwork was a punishment and demotion from Plaintiff's work as an Investigator. Other than Plaintiff, the work had been performed by secretaries and college and high school students.

10

61.    Or or around July 14, 2016, Plaintiff again complained of Defendants' ongoing LEIN violations to the Michigan State Policy.

62.    Plaintiff was compelled to request his retirement at end the of July 2016 due to Defendants ongoing harassment and retaliation resulting from his objections to and reporting of violations of law, regulation, rule and/or policy.

63.    In or around July 2016, Plaintiff met with Human Resources to try to finalize his retirement package.  After this meeting was completed, Defendants did not permit Plaintiff to collect his personal belongings at his desk.  Defendants instead insisted that Plaintiff leave the premises immediately.

64.    When Plaintiff returned to collect his belongings a few days later, Macomb County security guards prevented him from entering the Macomb County Juvenile Justice Center building and explained that they had been instructed by Defendants not to let Plaintiff into Macomb County buildings.

65.    On information and belief, Defendants continue to enforce a categorical ban which prohibits Plaintiff from entering Macomb County buildings.

66.    The Macomb County Juvenile Justice Center houses the Prosecutor's office for the Juvenile Division, juvenile courts, referees, and juvenile probation officers.

67.    Macomb County also has buildings housing juvenile, civil, and criminal courts.

68.    Plaintiff has a constitutional right to enter public government buildings in order to conduct activities, and engage in speech and petition the government on matters of public concern.

69.    On or around December 20, 2016, Defendants received written notification the Michigan State Police that they were in "noncompliance with LEIN policy," pursuant to the violations raised by Plaintiff.

## COUNT I
## 42 U.S.C. § 1983 – Procedural Due Process

70.    Plaintiff repeats and realleges all foregoing paragraphs as if they were set forth fully herein.

71.    Plaintiff enjoyed a constitutionally protected property interest in his job.

72.    Plaintiff enjoyed a constitutionally protected liberty interest in pursuing current and future employment and maintaining his reputation.

73.    At all times material hereto, it was clearly established that violating theses rights and interests was constitutionally impermissible.

74.    Acting under color of law, Defendants promulgated and carried out the official policies, orders, and directives described above intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of the Plaintiff, including the fundamental right to due process arising out of the United States Constitution.

12

75.    On or about February 23, 2016, Defendants, acting under color of law and pursuant to their respective authorities as described above, placed Plaintiff on administrative leave.

76.    Then, about a month later, Defendants, acting under color of law and pursuant to their respective authorities as described above, suspended Plaintiff for 5 days without pay.

77.    On or about April 22, 2016, Plaintiff was again escorted out of the building in which he worked and again put on administrative leave.

78.    On or about June 3, 2016, Plaintiff was issued yet another 5-day suspension without pay.

79.    These actions by Defendants were not designed to address a rule violation or other disciplinary issue, but rather were made to intentionally create bogus and fake reasons to discipline Plaintiff.

80.    Plaintiff was entitled to fundamentally fair procedures to determine whether misconduct occurred.

81.    Although Plaintiff received hearings before his suspensions, these hearings were sham proceedings that were not meaningful in any way, and the suspensions that resulted from these hearings were preordained.

13

82.   Eventually, Defendants constructively discharged Plaintiff, forcing him into retirement because of the adverse actions they were taking against him, including the preordained, baseless suspensions Plaintiff was subjected to.

83.   At or around the time of Plaintiff's discipline, suspensions, and constructive discharge, Defendants and/or other agents of Defendants leveled claims and charges against Plaintiff which stigmatized Plaintiff and severely damaged Plaintiff's opportunity for future employment.

84.   Said claims and charges were false.

85.   Said claims and charges were publicized within Plaintiff's workplace and were well-known amongst others working in the office.

86.   Plaintiff was not allowed to confront, much less cross-examine, his accusers, or to have a third-party do so.

87.   Plaintiff was never provided with a list of witnesses.

88.   Plaintiff was never provided with any witness statements.

89.   Plaintiff was prohibited from contacting witnesses.

90.   Plaintiff was denied a prompt, thorough, and impartial investigation.

91.   Plaintiff was denied a meaningful name-clearing hearing prior to his suspensions and forced retirement.

92.   Defendants' actions invaded Plaintiff's constitutionally protected liberty and property interests in an arbitrary, capricious, and irrational manner.

14

93.     Defendants acted with deliberate indifference to Plaintiff's presumed and actual innocence.

94.     Additional procedures would have proven that the misconduct at issue had not occurred.

95.     At all times material hereto, Plaintiff had a clearly established right to due process of law of which a reasonable public official would have known.

96.     Nevertheless, Plaintiff was disciplined, suspended, and constructively discharged by Defendants, depriving him of his property and liberty interests, without being afforded basic due process, including but not limited to notice of the allegations against him and a meaningful opportunity to be heard.

97.     Before depriving Plaintiff of his constitutionally protected property and liberty interests, Defendants did not conduct meaningful hearings that provided him with the opportunity to respond, explain, and defend, or otherwise afford Plaintiff notice of the grounds for his discipline, suspensions, and his eventual constructive discharge.

98.     In fact, the hearings Plaintiff did receive before his suspensions were sham proceedings, the results of which were preordained suspensions.

99.     Defendants' actions in depriving Plaintiff of his constitutionally protected property and liberty interests based upon preordained results, and without a meaningful hearing or other notice of the grounds for their discipline,

suspensions, and constructive discharge and an opportunity to respond, explain, and defend abridged his right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

100.   Defendants' actions invaded Plaintiff's constitutionally protected property interests in an arbitrary, capricious, and irrational manner.

101.   By promulgating and carrying out the policies, orders, and directives described above, Defendants have unlawfully violated Plaintiff's constitutional rights.

102.   As a direct and proximate result of Defendants' wrongdoing, Plaintiff has suffered humiliation and embarrassment, damage to his good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of everyday life.

## COUNT II
## 42 U.S.C. § 1983 – Freedom of Speech, Retaliation

103.   Plaintiff repeats and realleges all foregoing paragraphs as if they were set forth fully herein.

104.   While Plaintiff was still employed by Defendants, he had a constitutional right to engage in the free exercise of speech on issues of public concern, including speech regarding Defendants' LEIN violations and unlawful practice of issuing false arrest warrants.

16

105.   At all times material hereto, it was clearly established that violating these rights was constitutionally impermissible.

106.   While Plaintiff was still employed by Defendants, he exercised his right to free speech on matters of public concern by complaining, verbally and in writing, about Defendants' LEIN violations and unlawful practice of issuing false arrest warrants.

107.   The value of Plaintiff's speech outweighed any alleged government interest in the orderly and efficient operation of official functions.

108.   Acting under color of law, Defendants promulgated and carried out the official policies, orders and directives described above to deter Plaintiff from and retaliate against Plaintiff for engaging in proper protected speech, that is blowing the whistle on Defendants' LEIN violations and practice of requesting false arrest warrants. Defendants did so intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of the Plaintiff, including the fundamental right to freedom of speech, arising out of the First Amendment of the United States Constitution.

109.   By promulgating and carrying out the policies, orders and directives described above, Defendants have unlawfully violated Plaintiff's constitutional rights.

110.   Plaintiff suffered adverse employment actions, as detailed in the

17

paragraphs above, as a result of statements he made, which were protected by the First Amendment of the United States Constitution.

111.   Plaintiff's protected speech was, at least, a motivating or substantial factor in the adverse employment actions Plaintiff suffered.  But for Plaintiff's protected speech, Defendants would not have taken any adverse actions against Plaintiff.

112.   As a direct and proximate result of Defendants' wrongdoing, Plaintiff has suffered humiliation and embarrassment, damage to his good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to engage in free speech for legitimate and reasonable purposes.

## COUNT III
## 42 U.S.C. § 1983 – Freedom of Association

113.   Plaintiff repeats and realleges all foregoing paragraphs as if they were set forth fully herein.

114.   Plaintiff has a constitutional right to enter public government buildings, use and access government services that are available to the public, and serve on a jury.

115.   At all times material hereto, it was clearly established that violating this right was constitutionally impermissible.

18

116.    Acting under color of law, Defendants promulgated and carried out the official policies, orders and directives described above to deter Plaintiff from engaging in proper protected association. Defendants did so intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of the Plaintiff, including the fundamental right to freedom of association, arising out of the First Amendment of the United States Constitution.

117.    The restrictions that Defendants imposed on Plaintiff's freedom of association prohibited him, and continue to prohibit him, from accessing government buildings and government offices for legitimate purposes.

118.    The restrictions that Defendants imposed on Plaintiff's freedom of association during his administrative leaves, suspensions, and into his retirement were, and are, unreasonable in light of the purpose of the government forums he was and is restricted from entering.

119.    The restrictions were neither narrowly tailored to serve an important government interest, nor did they leave open alternatives for Plaintiff to communicate information and/or access the services offered through Macomb County buildings.

120.    Plaintiff had a constitutional right to enter and use the public services offered by the Macomb County Register of Deeds.

19

121.   By promulgating and carrying out the policies, orders and directives described above, Defendants have unlawfully violated Plaintiff's constitutional rights.

122.   As a direct and proximate result of Defendants' wrongdoing, Plaintiff has suffered humiliation and embarrassment, damage to his good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to access government buildings for legitimate and reasonable purposes.

**COUNT IV**
**42 U.S.C. § 1983 – Freedom to Petition**

123.   Plaintiff repeats and realleges all foregoing paragraphs as if they were set forth fully herein.

124.   Plaintiff has a constitutional right to enter public government buildings, use and access government services that are available to the public, and petition the government on matters of public concern.

125.   At all times material hereto, it was clearly established that violating this right was constitutionally impermissible.

126.   Acting under color of law, Defendants promulgated and carried out the official policies, orders and directives described above to deter Plaintiff from engaging in proper protected right to petition. Defendants did so intentionally and

deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of the Plaintiff, including the fundamental right to petition the government, arising out of the First Amendment of the United States Constitution.

127.  The restrictions that Defendants imposed on Plaintiff's right to petition prohibited him, and continue to prohibit him, from petitioning the government, including attending public hearings at Macomb County buildings for legitimate purposes.

128.  The restrictions that Defendants imposed on Plaintiff's right to petition during his administrative leaves, suspensions, and into his retirement were, and are, unreasonable in light of the purpose of the government forums he was and is restricted from entering.

129.  The restrictions were neither narrowly tailored to serve an important government interest, nor did they leave open alternatives for Plaintiff to communicate information and/or petition the government.

130.  By promulgating and carrying out the policies, orders and directives described above, Defendants have unlawfully violated Plaintiff's constitutional rights.

131. As a direct and proximate result of Defendants' wrongdoing, Plaintiff has suffered humiliation and embarrassment, damage to his good name

and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to petition the government for legitimate and reasonable purposes.

## COUNT V
## 43 U.S.C. § 1983 – Freedom of Speech

132.   Plaintiff repeats and realleges all foregoing paragraphs as if they were set forth fully herein.

133.   While Plaintiff was still employed by Defendants, he had a constitutional right to engage in the free exercise of speech on issues of public concern in public government buildings that existed for the purpose of engaging in such matters.

134.   After Plaintiff was no longer employed by Defendants, he had a constitutional right to engage in the free exercise of speech in government buildings, particularly when doing so would be reasonable in light of the purpose served by the forum or government building.

135.   At all times material hereto, it was clearly established that violating these rights was constitutionally impermissible.

136.   Acting under color of law, Defendants promulgated and carried out the official policies, orders and directives described above to deter Plaintiff from engaging in proper protected speech. Defendants did so intentionally and

deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of the Plaintiff, including the fundamental right to freedom of speech, arising out of the First Amendment of the United States Constitution.

137.   The restrictions that Defendants imposed on Plaintiff's freedom of speech during his administrative leaves, suspensions, and into his retirement were, and are, unreasonable.

138.   The restrictions that Defendants imposed on Plaintiff's freedom of speech prohibited him, and continue to prohibit him, from engaging in speech that is reasonable in light of the purpose of the forum.

139.   The restrictions were neither narrowly tailored to serve an important government interest, nor did they leave open alternatives for Plaintiff to communicate and/or to access the services offered through Macomb County buildings.

140.   By promulgating and carrying out the policies, orders and directives described above, Defendants have unlawfully violated Plaintiff's constitutional rights.

141.   As a direct and proximate result of Defendants' wrongdoing, Plaintiff has suffered humiliation and embarrassment, damage to his good name and reputation in the community, mental and emotional distress, humiliation and

embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to engage in free speech for legitimate and reasonable purposes.

## **Relief Requested**

Plaintiff demands judgment against Defendants as follows:

A.    Legal Relief:

    1.    Compensatory damages in whatever amount he is found to be entitled;

    2.    Exemplary damages in whatever amount he is found to be entitled;

    3.    Punitive damages in whatever amount he is found to be entitled; and,

    4.    An award of interest, costs, reasonable attorney fees, and expert witness fees.

B.    Equitable Relief:

    1.    A declaratory injunction out of this Court stating that Defendants' prohibition of Plaintiff from entering public government buildings while he was on administrative leaves and suspensions was unconstitutional;

    2.    An injunction out of this Court prohibiting Defendants from further limiting Plaintiff's access to public government buildings;

    3.    An injunction or order from this Court placing Plaintiff in the position he would have been had Defendants not violated the law or Plaintiff's rights;

4.     An injunction out of this Court prohibiting any further acts of wrongdoing or retaliation against Plaintiff;

5.     An award of interest, costs and reasonable attorney fees; and,

6.     Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: July 6, 2017                    Respectfully submitted,

**DEBORAH GORDON LAW**
**/s/ Deborah L. Gordon (P27058)**
**Benjamin I. Shipper (P77558)**
**Irina L. Vaynerman (0396759)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com

## JURY DEMAND

Plaintiff Robert Chuchran, by and through his attorneys Deborah Gordon Law, demands a trial by jury of all the issues in this cause.

Dated: July 6, 2017                    Respectfully submitted,

**DEBORAH GORDON LAW**
**/s/ Deborah L. Gordon (P27058)**
**Benjamin I. Shipper (P77558)**
**Irina L. Vaynerman (0396759)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304

25

(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com