# EXHIBIT F

# CHUCHRAN v. COUNTY OF MACOMB, ET AL.

# ELIZABETH ANN CANFIELD

April 11, 2017

*Prepared for you by*




**Bingham Farms/Southfield • Grand Rapids**
Ann Arbor • Detroit • Flint • Jackson • Lansing • Mt. Clemens • Saginaw • Troy

ELIZABETH ANN CANFIELD
April 11, 2017

Page 13

1  A. Uh-huh.
2  Q. (Reading.)
3     "The agency stopped accessing LEIN for
4     civil paternity cases after being informed by
5     staff in late 2014 of the unauthorized nature
6     of these inquiries."
7     So, I'll stop right there.
8     Am I correct that it's illegal to access LEIN for
9  civil paternity cases?
10 A. It is against policy, yes.
11 Q. Is it also illegal or against policy to access LEIN for
12    any civil purpose?
13 A. Yes.
14 Q. And when we say "civil," I have a definition here, but
15    as I understand it, "civil" means any matter that --
16    where there -- well, let me get the definition.
17    It's not part of the criminal justice system; is
18    that correct?
19 A. Yes.
20 Q. And there is no court order that is yet involved?
21 A. Correct.
22 Q. Okay. Okay. When else did you talk to Mr. Keith?
23 A. Again, that's all the calls I have documented. It's my
24    vague recollection that I may have spoken to him one or
25    more times after that, again, regarding questions he had

Page 14

1     as part of the case. But we don't generally retain
2     those documents in a routine complaint because the goal
3     of the process is to help the agency get things
4     completed and, generally speaking, dates don't come into
5     it. The final case is important.
6     I documented the telephone call because Mr. Keith
7     had requested to make sure that we were aware that they
8     had stopped using LEIN for that purpose back in 2014,
9     and so I did make a note of that.
10 Q. And you took him at his word, I assume?
11 A. Yes.
12 Q. You did no investigation to see what they were doing or
13    not doing?
14 A. We do not have authority to do that.
15 Q. Okay. You do not?
16 A. We do not.
17    MS. GORDON: Okay. Do you have a --
18 BY MS. GORDON:
19 Q. I just want to hand you some notes and see if you know
20    who wrote these notes. It appears to be --
21 A. Yes, these are my notes. I'm sorry.
22 Q. These are your notes that we --
23    MS. GORDON: You know, in fact, let's --
24    MR. FLEURY: I don't know what you're referring to.
25    MS. GORDON: I know.

Page 15

1  A. These right here.
2     MR. FLEURY: What? The first paragraph? Is that
3     what you were just talking about?
4  A. Right here.
5     MS. GORDON: Tell you what. Let's do this: I'm
6     going to hand you Exhibit 1, just so we'll all be on
7     the -- literally the same page with this.
8        (Deposition Exhibit 1 marked
9        for identification.)
10 BY MS. GORDON:
11 Q. Why don't you identify for the record, Ms. Canfield,
12    each page of Exhibit 1, and then we'll have it on the
13    record.
14    So, the first page looks like a file folder.
15 A. Yes.
16 Q. Just a black paper.
17 A. Yeah.
18 Q. Okay.
19 A. The second page is the closing correspondence that was
20    written December 20th, 2016, advising the Macomb County
21    Prosecutor that we were satisfied with the steps that
22    they took to resolve the complaint, and that it was
23    closed.
24    The next page is what we call our case file notes.
25    This is where I document the significant events along

Page 16

1     the case, the opening report, the correspondence, any
2     updates that occur, and then the final closing reports.
3     And it's reviewed by three people before it goes up
4     to Ms. Brinningstaull for final signature.
5     And the final page is the opening correspondence
6     that we sent on May 18th, 2016, regarding the complaint
7     that we received. It documents the allegations that
8     were made, or the issues that we believe we have concern
9     about, and the directions to the agency and how -- the
10    steps that need to be taken to resolve them.
11 Q. Okay. Now, I'm going to hand you something different,
12    which is Chuchran Bates stamp 268 for the record.
13    And those look to be notes from somebody at the
14    Michigan State Police.
15    Do you recognize the stamp on the bottom there,
16    "Michigan Crime Conference, Michigan State Police"?
17 A. I do.
18 Q. Do you know what this it?
19 A. I believe this is -- I recognize the handwriting as
20    Mr. Kevin Collins. He was the person that passed me the
21    initial complaint regarding the misuse and requested
22    that I open an investigation and send correspondence.
23 Q. Do you understand that those are notes of a conversation
24    with Bob Chuchran?
25 A. Yes.

Pages 13 to 16

